Charles J. Hannigan, J.
This hearing was brought on by order to show cause, signed by this court, dated May 26, 1969. The order was directed to the Niagara County Board of Elections, and directed the said board, or its representatives, to show cause why the name of David Podgers should not be placed upon the ballot as a Republican candidate for the office of 5th Ward Alderman in the City of Lockport.
The hearing was held on May 29, 1969, wherein evidence was offered by the petitioner and the respondent. Decision was reserved upon a motion addressed to the jurisdiction of the court, and the findings upon the evidence adduced at the hearing.
*897 The basic facts which give rise to this hearing are not in question. It was stipulated that the petitioner filed his designating petitions with the Niagara County Board of Elections for the office of the 5th Ward Alderman, City of Lockport. The petitions designated that he sought the nomination of the Bepublican Party. There is no dispute concerning the existence of the required number of signatures, nor that they are genuine, nor that the filing was timely. Additionally no objections were received by the Board of Elections, addressed to the petitions. The objection to the petitions, and their validity, was raised by the board itself. The board advised Mr. Podgers that they refused to accept his designation, by reason of the fact, they alleged, that he was not enrolled as a member of the Bepublican Party, and his petitions were, therefore, .in violation of subdivision 1 of section 137 of the Election Law. There is no question that this proceeding was commenced within the time limit prescribed by section 330 of the Election Law.
The first question presented is one of jurisdiction. This proceeding was commenced pursuant to section 330 of the Election Law. The respondent contends that this proceeding could only be commenced in the Supreme Court, and that section 330 specifically excludes the Niagara County Court from hearing this application.
The case law is silent upon the subject of jurisdiction of the County Court to hear the matter. No cases involving this question have been brought to the court’s attention; nor has the court been able to find any case on point through its research. Therefore, it must be resolved by judicial interpretation of the statute in question.
Examination of the statute discloses that the seven subdivisions follow a chronological sequence of disputes which may arise between candidates for a particular office, or between a candidate and the Board of Elections.
Subdivision 1 concerns itself with objections to the designations of candidates, and parties aggrieved by the acceptance or rejection of the designating petition.
Subdivision 2 concerns itself with nominations, and persons aggrieved thereby, whether such nominations result from convention or primary election. The court here may specifically, set aside the results (nomination) of such convention or primary election in the case of fraud or irregularities.
Subdivision 3 concerns itself with the makeup of the ballot itself. This presupposes that the basic questions of designation and nomination have been resolved. For example, a candidate may here question his position on the ballot.
*898 The remaining subdivisions (4-7) concern themselves, with the conduct of the election itself.
The section (next-torlast paragraph) goes on to state that a County Judge has jurisdiction of a proceeding under subdivisions 1 and 2, except as to a nomination or election at a primary election or a nomination by a State or judicial district convention.
The respondent contends that this limitation upon the authority of County Court would preclude the hearing of this proceeding. The contention is that the petitioner here is seeking nomination or election at a primary election.
Implicit, in such a contention, is the further contention that the words “designation” (subd. 1) and “nomination” are synonymous. The limitation upon the jurisdiction of County Court refers only to “nominations ” or “ elections ”; it does not specifically state that County Court does not have jurisdiction to hear a petition asking that the ‘ ‘ designating ’ ’ petitions be accepted and filed.
The limitation upon the jurisdiction of County Court to hear this matter will be strictly construed. The grant of jurisdiction, contained within the same paragraph is broad (subds. 1, 2, 3 and 7); and the exceptions to that broad grant must be specified.
The court finds that the petitioner has requested relief pursuant to subdivision 1 of section 330 of the Election Law. The petition requests: ‘ ‘ The designation of any candidate * * * in a proceeding instituted by any candidate aggrieved * * * but a proceeding under this subdivision must be instituted within fourteen days after the last day to file petitions ”,
This finding is in concert with the clear chronological sequence of events or possible disputes which may arise during the course of an election when viewed from beginning to end. The first determination to be made by the Board of Elections is the acceptance and validation of a candidate’s petitions. Here, the board has refused to validate the petitions, alleging failure to comply with subdivision 1 of section 137 of the Election Law. If the petitioner is to seek relief from this determination he must comply with subdivision 1 of section 330, including the 14-day time limitation set forth therein.
The court further finds that the County Court has unrestricted jurisdiction to hear applications which request relief pursuant to subdivision 1 of section 330. The limitations heretofore enumerated limit the jurisdiction of County Court only with respect to the grant of jurisdiction under subdivision 2 of section 330. The restrictions upon the County Court refer to the nomination or election of candidate; not the designation of a candidate. If the Legislature had intended to restrict the *899 jurisdiction of the County Court to .preclude hearings concerning ‘1 designation ’ ’ it must expressly state the restriction.
The words “ nomination ” and “ designation ” as used in the Election Law are not synonymous. They are defined within the law itself, and have specific meanings. (Election Law, § 2, subds. 5 and 6.) They are not interchangeable.
Therefore, the restriction upon County Court jurisdiction, as it pertains to nomination, or election, does not restrict the grant of jurisdiction to hear and determine matters of fact and law which arise under subdivision 1 of section 330. Indeed, the afore-mentioned words of restriction, found within the statute, refer specificially to the same words as contained in subdivision 2.
Therefore, the court finds that it has jurisdiction to hear the applications and make determination of matters of fact and law which arose at the hearings.
The only remaining question is one of fact; the petitioner contends that he first registered after July of 1967. At that time, Niagara County was operating under permanent personal registration. He resided at 4 Bright Street, and states that he affiliated Republican when he registered. The registration took place at the courthouse. He states that he moved to 497 Walnut Street in May of 1968, and in June of 1968 again came to the courthouse and reregistered under his new address and again affiliated Republican. He did not vote in the primary or general elections of 1968. He was not asked if he voted in the recent school election of 1969. He never received an identification card from the Board of Elections to indicate that he was registered as a Republican.
Various officers and employees of the Board of Elections testified and explained the procedure which would be followed in the event that the petitioner did register in the summer of 1967 and again reregister in June of 1968. The records maintained by the Board of Elections were introduced into evidence at the hearing, and were examined by the court.
At the outset, it is evident that there is no contention of foul play; nor, was any proof offered that the Board of Elections, or anyone associated therewith, has willfully or fraudulently interfered with the registration and affiliation records of the petitioner.
The personnel of -the board testified that four separate documents are signed by the registrant upon central registration and affiliation. They are:
1. Central index card (white) — this is the primary record of registration which is maintained in a central file within the *900 office of the Board of Elections. The file is maintained with an alphabetical index.
2. Voting district index card (buff) — this is placed in the ledger designated as the legislative district or ward within which the registrant resides. It is further indexed within this legislative district ledger by the street of residence, and finally ■ the number of the residence.
3. Information card (yellow) — this card contains some of the information found on Nos. 1 and 2, above, and is used to make the addressograph plate for each registered voter.
4. Affiliation blank (white) — the voter, if he wishes, at the time of registration, may affiliate with one of four political parties. This document is placed in a sealed ballot box, and is not removed until two weeks after the general election. It is then assigned to the card contained in the central index.
In addition to the above documents, which are signed by the registrant at the time he registers, the following proof of registration is produced by the Board of Elections:
5. Addressograph plate • — ■ a metal plate with the name, address and affiliation of each voter is made from the yellow information card (No. 3 above). In the case of petitioner, there would be two separate plates by reason of the two separate registrations. The old plate is not destroyed; but merely retired upon reregistration.
6. Affiliation sheets — these are compilations of the central index, voting district index and information cards, which are compiled during the course of the year. A new affiliation sheet is prepared each year. The petitioner by reason of his two registrations should appear on the registration sheets for 1968 and 1969.
7. Retired registration index — this is an index comprised of original registration cards where the person has reregistered by reason of a change in address. The original registration card is retired and placed in this index.
8. Identification cards — these cards are produced during the course of processing the voter’s registration forms, and are mailed to the voter, or given to him when he visits the polls to vote. In this case, the petitioner should have received two of these identification cards.
The employees of the Board of Elections testified concerning the cross-checking and cross-referencing which is customary in processing a registration. They further testified that they have examined all of the afore-mentioned records, and find no record of the 1968 registration of the petitioner. Further, they testified that they have no record of the purported 1967 regis *901 tration. In fact, the examination of their records does not disclose the name of the petitioner, at any time, in any of the various indices. They have not only checked the various indices by name and house number; they have examined for similar names such as “ Hodgers, Dodgers, and Rodgers ” and as well as reverse entries such as Rodgers, David. They have examined the entire street indices for Walnut and Bright Streets, presuming a mistake was made in the number assigned to the house of the petitioner’s residence.
Retired records have been resurrected, and examined to find some indication that the petitioner registered in either 1967 or 1968. No such evidence has been found. Many of these enumerated records are independent, one from the other. Nothing was found in any of the records to corroborate the testimony of the petitioner in any small degree; not even with reference to the purported 1967 registration.
Such a complete absence of documentary proof, concerning the two separate registrations cannot be attributable to clerical error. Absent clerical error, I must presume that the public officers performed their duties with honesty and integrity.
“ The general presumption is that no official or person acting under an oath of office will do anything contrary to his official duty, or omit anything which his official duty requires to be done.” (Matter of Marcellus, 165 N. Y. 70, 77.) (See, also, Matter of Whitman, 225 N. Y. 1; Culp v. City of New York, 146 App. Div. 326.)
The court therefore, sustains the determination of the Board of Elections, and finds that the petitioner did not comply with subdivision 1 of section 137 of the Election Law, in that he was not enrolled as a member of the Republican Party at the time of the filing of his petition, and the petition is invalid.